[Crim. No. 9777. Third Dist. Apr. 12, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS M. COLLIGAN, Defendant and Appellant.

**COUNSEL**

Gregory K. Mann, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PARAS, Acting P. J.**—Defendant appeals from a judgment entered after a jury found him guilty of two robberies (Pen. Code, § 211), in both of which he used a firearm (Pen. Code, § 12022.5). He claims error in pretrial identification procedures, insufficient evidence to support the gun-use finding in one of the robberies, and ineffective assistance of counsel.

About noon on Monday, August 1, 1977, the bookkeeper for the Black Angus Restaurant in Citrus Heights was robbed in the restaurant parking lot as she was taking the Sunday receipts to the bank. The bank bags taken contained $4,800 in cash, $540 in checks, and about $700 in charge slips. The bookkeeper, Caroline Holmes, saw a man approach as she was entering her car. After he reached her, he pulled his shirt open at the waist and showed her the handle of a gun, telling her to be quiet, that he had a gun, and that he didn't want to use it. Holmes feared for her life and safety; she gave the man the money and he drove off in a car.

No gun was admitted into evidence at the trial. The court held a hearing outside the presence of the jury and ruled that Holmes could not sufficiently identify an offered weapon. Holmes testified on March 29, 1978, at the trial, and identified defendant as the man who robbed her. She had previously identified defendant at the preliminary hearing on January 19, 1978. On October 4, 1977, two months after the robbery, she was shown a set of 10 photographs by a detective from the sheriff's office. The detective told her to go through them and see if they depicted anyone she recognized, that a photograph of the man who robbed her might or might not be in the set. Holmes picked out a picture of defendant from the middle of the stack after looking at all the photographs; she told the detective she was certain that "looked like the guy," although she couldn't be positive because "pictures are just not the same."

At some point after the robbery, Holmes was hypnotized by a police officer in an attempt to help her recall the entire license plate number of the car used in the robbery. She also gave a description of the robber during the session. The record does not show when this was done, but the briefs of both counsel assume it was before Holmes was shown the photographs.

The second robbery occurred on Monday, August 29, 1977, at another Black Angus Restaurant on Florin Road. The bookkeeper of the establishment, Lorraine J. Tipps, was preparing bank deposits of the Saturday and Sunday receipts when the restaurant manager arrived with a man who had told the manager he was from Saga, the restaurant's parent corporation. After the manager introduced him, the man produced a gun, announced a holdup, told the manager to lean up against the wall (threatening to shoot him if he moved), and demanded the deposits. Tipps gave them to him in bank bags; he then left, stating that it would take 30 seconds to get out of the building and he would shoot the first person who interfered because he would get more on a robbery charge than on a murder. A total of $13,500 in cash, checks, and charge slips was taken.

That same day Tipps and the manager helped police draw a composite picture of the man. Both picked defendant's picture from the same set that had been presented to Holmes; and the procedure used was the same. Tipps and the manager identified defendant at the trial. None of the stolen money, checks, or charge slips was ever recovered.

■■ Defendant's first contention is that Holmes' in-court identification of him was tainted by the hypnosis. He claims that the possibility of suggestion by the hypnotist is so substantial that we must assume the in-court identification was the fruit of an unfair procedure.

In *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834], we held that a claim of improper pretrial identification will not be considered on appeal absent an objection in the trial court, because the trial court has no reason to inquire into the independent recollection of the witness if the issue is not before it. (38 Cal.App.3d at p. 6.) In that case, as here, faulty identification was at the heart of the defense and the witness was subjected to vigorous, detailed cross-examination on that issue. Furthermore defendant does not contend that hypnotic suggestions were actually made to Holmes which affected her identification; thus no reason to depart from the view expressed in *Johnson* exists. We decline to hold that the use of hypnosis to help a witness remember a license number per se invalidates identification of a person seen and heard by that witness. Nor was there anything unfair in the manner of presentation of the photographs.

■ Defendant's next claim is that as to the Holmes robbery the display of the gun by opening his shirt and his statement that he had a gun and didn't want to use it do not constitute use of a firearm as defined by section 12022.5 of the Penal Code. At most, he urges, his behavior was a violation of Penal Code section 12022, committing a felony while *armed* with a weapon, because the record shows he never touched the gun, pointed it at the victim, or fired it. We do not accept this contention.

Penal Code section 12022.5 is applicable in a case in which a firearm is displayed menacingly in the commission of a robbery. (*People* v. *Spencer* (1972) 22 Cal.App.3d 786, 800 [99 Cal.Rptr. 681].) Defendant concedes for purposes of this contention that he displayed the gun. The clear implication of the remark that he didn't want to use it was that he would use it if Holmes did not cooperate; it caused her to be frightened for her life and safety and to comply with his demands. It would be fatuous to conclude under these circumstances that the gun was not "used" in the commission of the robbery.

■ Finally, defendant claims defense counsel was ineffective for failing to object to the Holmes identification and to move for separate trials on the two charges. Since as above noted there was nothing objectionable about Holmes' identification, we cannot fault counsel on the first ground. ■ As to the second, defendant argues counsel should have moved for separate trials because the relatively stronger evidence (two eyewitness identifications) on the second robbery could have influenced the jury to convict on the first charge as well. But this argument can be made in virtually every case of joinder of different offenses, yet such joinder is normal with connected offenses or offenses of the same class. (Pen. Code, § 954.) Such is the case here, and even though the trial court had discretion to sever "in the interest of justice and for good cause shown" (*ibid.*) there is nothing to suggest that such a motion would have been granted. The failure to make it does not demonstrate incompetence, for defense counsel need not make all conceivable motions including those which he deems useless. ■ Claims that the case might have been handled more effectively or that the attorney's tactics were poor are insufficient to show ineffectiveness of counsel. (*People* v. *Martinez* (1975) 14 Cal.3d 533, 538 [121 Cal.Rptr. 611, 535 P.2d 739].) A crucial defense must be withdrawn (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 612 [114 Cal.Rptr. 250, 522 P.2d 1058]), which is not the case here. Defendant must show that the omission involved a critical

issue and cannot be explained on the basis of any knowledgeable choice of tactics. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].)

The judgment is affirmed.

Evans, J., and Mason, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.