[Crim. No. 44931. Second Dist., Div. Seven. June 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JOHN CORY, Defendant and Appellant.

**COUNSEL**

Robert B. Le Corvec, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—Appellant was convicted of one count of robbery and sentenced to the midterm of three years, plus an enhancement of two years for use of a firearm (Pen. Code, § 12022.5).[1] On appeal he contends: (1) that he was denied his right to a speedy trial because not brought to trial within the time limit specified by Penal Code section 1382; (2) that the sentence enhancement must be stricken because the jury did not return a finding sufficient to support it; (3) that refusal to allow defense counsel to make a second closing argument to the jury denied appellant due process. We affirm.

I. WHILE APPELLANT'S TRIAL DID NOT COMMENCE WITHIN THE SPEEDY TRIAL LIMITATION PERIOD OF SECTION 1382, THE ERROR DOES NOT REQUIRE REVERSAL.

 In California, the constitutional right to a speedy trial has been particularized by section 1382, which provides in relevant part that *unless good cause to the contrary is shown*, the trial court must dismiss a prosecution if the defendant is not brought to trial either within 60 days after the information is filed, or, if the defendant has consented to a later trial date, within 10 days after the date so set. If the trial court erroneously denies a motion to dismiss under section 1382, the defendant may obtain immediate pretrial appellate reversal by writ of mandate, without demonstrating prejudice stemming from the delay of trial. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 149-151 [32 Cal.Rptr. 44, 383 P.2d 452].) However, if, as here, the defendant seeks review of the ruling on appeal after trial and conviction, he must establish not only error in denying his motion to dismiss but also prejudice therefrom in order to obtain reversal. (*Id.,* at pp. 151-154; *People* v. *Johnson* (1980) 26 Cal.3d 557, 574 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) In the case at bench, we conclude that appellant has proven error but not prejudice.

After numerous continuances at defendant's request or with his consent, the action was definitively set to commence trial on May 4, 1983. Owing to a weekend, the tenth day thereafter was May 16. On that date the case

---

[1]Statutory citations hereinafter by section number are to the Penal Code.

was assigned to a trial department. At 3:08 p.m. the matter was called, a panel of jurors was sworn, and 12 were seated. The court then stated:

"THE COURT: All right. Ladies and gentlemen, this court will stand in recess until tomorrow morning at 11:00 A.M.

"The reason for that is the court is in the midst of another trial, and I thought I would meet you this afternoon and say hello to you and come back tomorrow at 11 o'clock.

"Hopefully by 11 o'clock I will be through with the original case. It is a non-jury trial.

"All of you jurors are ordered to return to this department tomorrow morning at 11:00 A.M. That's it."

The jury was then excused, whereupon defense counsel objected that "the mere impanelling of the jury is not sufficient to toll the time period" by commencement of trial. The court responded as follows:

"THE COURT: You understand the problem with the Court is that I am in the middle of this trial, and I am making every effort to conclude both cases and also to give your client an opportunity to have his day in court.

"For that reason, to protect your client, to protect the case, we impanelled the jury.

"It may be that tomorrow we may not be able to have a jury. Maybe we won't be able to have these jurors here, they would be unable. I believe we have two death penalty cases upstairs.

"We share our panels with the Municipal Court, and there are other ten-day cases, so this court really—I did my best."

The May 16 proceedings thereupon concluded, at 3:17 p.m. At 11:17 a.m. the following day proceedings recommenced. Defense counsel promptly moved for dismissal under section 1382, again asserting that trial had not commenced on the critical 10th day. The motion was denied and the court then proceeded with voir dire.

In determining whether appellant was "brought to trial" within the meaning of section 1382 when the court impaneled a jury but then recessed the case to the next day, apparently to conclude another trial then in progress, we are both guided and governed by a recent decision of our Supreme Court

rendered in a factually similar case. In *Rhinehart* v. *Municipal Court* (1984) 35 Cal.3d 772 [200 Cal.Rptr. 916, 677 P.2d 1206] (*Rhinehart*), a jury was selected on the tenth day but the case was then continued to several days later, the court stating on the record that it was engaged in another trial and that the jury was being impaneled to avoid dismissal under section 1382. On these facts, the Supreme Court held the defendant had not been timely brought to trial. Disapproving a prior decision that jury impanelment per se constituted a "bringing to trial" within the meaning of section 1382,[2] the court observed that such a mechanistic interpretation would tolerate evasive practices. Instead, the court stated, consideration must be given to "the trial court's availability and readiness to try a case." (35 Cal.3d at p. 779.) The court indorsed the holding of *Sanchez* v. *Municipal Court* (1979) 97 Cal.App.3d 806, 813 [159 Cal.Rptr. 91], that section 1382 is satisfied if, in addition to the swearing of a jury, the record objectively reflects that the case has been assigned to a court that is ready to process it and "has committed its resources to the trial." ██ The *Rhinehart* court then stated its holding as follows: "[A]n accused is 'brought to trial' within the meaning of section 1382 when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn." (35 Cal.3d at p. 780; fns. omitted.)

██ Construing the " 'objective record' " (*id.*, at p. 778) in light of the standards enunciated in *Rhinehart*, it cannot be said that appellant was brought to trial on May 16, 1983. The trial court repeatedly acknowledged that it was in the middle of another trial and therefore could not proceed with appellant's, beyond the brief impanelment process, until the following day. Thus, as of the critical tenth day the court was not "available and ready to try the case to conclusion," nor had it "committed its resources to the trial" of appellant.

The People argue that the facts that jury impanelment occurred late in the day and that the proceedings recommenced the next day at the time the trial court had said they would render this case determinatively comparable to *Sanchez* v. *Municipal Court, supra,* and *People* v. *Amati* (1976) 63 Cal.App.3d Supp. 10 [134 Cal.Rptr. 61], in both of which cases similarly timed proceedings were held to constitute an effective commencement of trial. But the present case is critically different in that here—as in *Rhinehart*, and unlike *Sanchez* and *Amati*—the midafternoon adjournment of the case to midmorning the next day was expressly taken to enable the court to conclude another trial in the interim. The trial court's clearly expressed

---

[2]*People* v. *Katzman* (1968) 258 Cal.App.2d 777 [66 Cal.Rptr. 319].

unavailability due to another pending trial establishes that the proceedings here were insufficient to meet the *Rhinehart* standard of judicial readiness for and commitment to the trial process on the critical day.

Since appellant was not brought to trial on the final day allowed by section 1382, the remaining question under the statute is whether good cause was shown for not dismissing the action. The People have the burden of showing such good cause (*Rhinehart, supra,* 35 Cal.3d at p. 781), and they have not attempted to do so here. Moreover, the record does not independently reflect any such good cause. ██ ██ The delay in commencement of appellant's trial was apparently the result of calendar congestion in the trial court. Such congestion cannot constitute good cause for refusing to dismiss under section 1382 unless "'exceptional circumstances'" were present to engender the congestion. (*Rhinehart, supra,* at pp. 782-783.) The record here does not intimate the existence of any such exceptional circumstances. The trial court therefore should have granted appellant's motion to dismiss under section 1382.

However, as we noted at the outset, since appellant's claim of error under section 1382 comes to us on appeal after conviction rather than on pretrial petition for writ, the error we have identified does not require reversal unless it is determined to have been prejudicial. There is no basis for such a determination in this case. While appellant's trial did not commence until well after the information was filed, the period of delay attributable to violation of section 1382 was less than one day, and appellant does not in any way suggest that this delay impaired the fairness of his trial. Furthermore, this is not a case in which pretrial dismissal would have barred further prosecution by reason of either section 1387 or the statute of limitations. Therefore, there being no showing or even assertion of prejudice flowing from the erroneous failure to dismiss under section 1382, that error does not require that the judgment be reversed. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 574.)

II. THE JURY'S FINDING WITH RESPECT TO APPELLANT'S USE OF A FIRE-ARM WAS TECHNICALLY SUFFICIENT AND A PROPER BASIS FOR ENHANCE-MENT OF APPELLANT'S SENTENCE UNDER SECTION 12022.5.

██ Sections 1203.06 and 12022.5 each provide discrete sentencing consequences for a defendant who is found to have "personally used a firearm" in the commission of a robbery (as well as certain other offenses). Under section 1203.06, the defendant is ineligible for probation or suspen-

sion of sentencing; under section 12022.5 the sentence imposed is enhanced by two years' additional, consecutive imprisonment. For each section to operate in a given case the fact of firearm use must be charged in the accusatory pleading and then either admitted by the defendant or found true by the trier of fact. (§ 1203.06, subd. (b)(1); § 969d.)

In the present case, the information alleged that appellant had personally used a firearm within the meaning of both sections; the jury was instructed on this issue by means of CALJIC No. 17.19; the jury returned an affirmative finding on the issue as posed in the form of verdict; and the court accordingly sentenced defendant, inter alia, to the two-year enhancement provided by section 12022.5.

Appellant challenges the propriety of this enhancement, asserting that the jury's finding was insufficient to support it because the verdict referred to section 1203.06 but not to section 12022.5; he contends that a separate or distinct finding relating to the latter statute was necessary to permit the enhancement. We disagree.

The finding returned by the jury in this case reads: "We further find that the allegation that in the commission of the offense that said defendant personally used a firearm within the meaning of Penal Code Section 1203.06(a)(1) to be TRUE." This finding closely paralleled the form prescribed as sufficient by section 1158a, subdivision (b), which provides that in section 12022.5 cases the necessary "verdict of the jury upon a charge of using a firearm may be: 'We find the charge of using a firearm contained in the _____count true' . . . ." Since this was a one-count case, there was no need to include a reference to the count in question. Thus, the only significant difference between the instant verdict and that prescribed by section 1158a was the reference to section 1203.06. But that feature must be deemed immaterial.

██ ██ Here, as generally, the jury's function was to find whether the *facts* necessary for conviction had been proven, by assessment of the evidence admitted at trial in light of the court's instructions defining the types and quanta of facts necessary for conviction. The verdict, culminating this process, was the jury's statement whether it had or had not found those facts. There was no need in this *fact-finding* process for enumeration in the verdict of the statutes that defined the facts to be found or prescribed their legal effects. Correspondingly, section 1158a prescribes an appropriate form of verdict concerning firearm use under section 12022.5 which does

not include any reference to the statute. Section 1158a, subdivision (b) is thus a legislative confirmation that the type of finding appellant here claims necessary was unnecessary, and conversely that the reference to another statute, to which appellant objects, was surplusage.

These conclusions are buttressed by the fact that the generally approved jury instruction concerning use of a firearm is designed for use in connection with determinations under both sections 1203.06 and 12022.5. That instruction—the 1980 revision of CALJIC No. 17.19, which was given in this case—states that "[t]he term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it." This definition is identical to that set forth in section 1203.06, subdivision (b)(3). Since the *facts* thus to be found under this instruction are the same for each of the two statutes, it logically follows that an affirmative finding rendered by a jury so instructed is sufficient to support the sentencing court's invocation of both section 1203.06 and section 12022.5. For again, the function of the verdict is to register the jury's determination of whether the evidence sufficiently establishes the facts that the instructions recite are necessary to conviction.

Appellant contends, however, that the "use of a firearm" contemplated by section 12022.5 differs in meaning from the identical term as set forth and defined in section 1203.06. If this were so, any conceivable defect in the judgment below would arise not from the form of the verdict—which, as we have noted, was sufficient under section 1158a, subdivision (b)—but rather from an error in the use of CALJIC No. 17.19 to direct the jury in its fact-finding process for purposes of section 12022.5. But appellant has not assigned error in the giving of this combined "use" instruction, and our review of the case law discloses no such error.

Appellant's claim of inconsistency between section 1203.06's definition of "use" and the meaning of the term as employed in section 12022.5 is based upon an isolated reading of certain language in *People* v. *Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024] (*Chambers*). The court there discussed the latter section's meaning and stated in part that "[a]lthough the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies." (*Id.*, at p. 672.) Appellant contrasts this observation with the section 1203.06-CALJIC definition and asserts that, for example, the latter's alternative of

"display in a menacing manner" may not encompass the *Chambers* element of the firearm use's having produced a fear of harm or force.

Appellant's contention bears some facial plausibility if the quoted *Chambers* language is read in isolation. But there is other and stronger authority supporting the propriety of the CALJIC definition. ■ First, immediately after its statement quoted above, the court in *Chambers* continued, "'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' [Citation.] The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' should be broadly construed." (35 Cal.3d at p. 672.) ■ Second, in a more recent opinion, the Supreme Court stated, more narrowly and positively, "The menacing display of a firearm to intimidate a victim is sufficient to prove use of the firearm under section 12022.5 [citation] . . . ." (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 102 [192 Cal.Rptr. 748, 665 P.2d 520].) Third, the case the Supreme Court approvingly cited for this proposition recites that section 12022.5 "is applicable in a case in which a firearm is displayed menacingly in the commission of a robbery"—a virtual paraphrase of the section 1203.06 definition that appellant here suggests is inadequate. (*People* v. *Colligan* (1979) 91 Cal.App.3d 846, 851 [154 Cal.Rptr. 389].) Fourth, an earlier but essentially identical form of CALJIC No. 17.19 was approved, as sufficient under *Chambers,* in *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163]. ■ And more recent decisions have approved the present CALJIC definition as sufficient and appropriate for purposes of section 12022.5. (E.g., *People* v. *Barela* (1983) 145 Cal.App.3d 152, 161, fn. 5 [193 Cal.Rptr. 257] (". . . CALJIC No. 17.19 (1980 rev.) . . . is designed for the finding under section 12022.5 and for the finding under section 1203.06, subdivision (a)(1). Concerning personal use of a firearm, the same facts support a conclusion under section 1203.06 as under section 12022.5. . . ."); *People* v. *McKissick* (1984) 151 Cal.App.3d 439, 445 [199 Cal.Rptr. 95].) Appellant does not cite, nor has our research disclosed, any decision to the contrary.

We conclude, therefore, that the jury's finding that appellant personally used a firearm was sufficient to permit the enhancement under 12022.5 even though the finding did not refer to that statute and instead referred to section 1203.06, subdivision (a)(1). Furthermore, any inconformity between the instruction under which the jury rendered its finding and the Supreme Court's *Chambers* discussion did not constitute error.[3]

---

[3]We observe, moreover, that any such "error" would clearly have been harmless. The victim of appellant's robbery testified unequivocally that appellant had pointed a gun at her when demanding money from a cash register and that she had been rendered frightened and compliant. Thus, appellant's conduct *and* its result fell directly within the language of *Chambers* upon which appellant relies.

### III. The Refusal to Allow Defense Counsel to Make a Second Closing Argument to the Jury Did Not Deny Appellant Due Process.

■ Section 1093, subdivision 5 provides for closing arguments by counsel for the prosecution and the defendant, and specifies that the prosecution has "the right to close." In this case appellant's counsel unsuccessfully moved the trial court to allow him to make a second closing argument, on the grounds that this was required by considerations of fundamental fairness of the magnitude of due process of law. Appellant renews that contention here. We reject it.

■ California has long recognized that the defendant has a constitutional right to closing argument in a criminal trial, either jury or non-jury (*In re William F.* (1974) 11 Cal.3d 249, 255, fn. 5 [113 Cal.Rptr. 170, 520 P.2d 986]), and the United States Supreme Court has recently held that such a right of argument is part of the right to counsel guaranteed by the Sixth and Fourteenth Amendments (*Herring* v. *New York* (1975) 422 U.S. 853 [45 L.Ed.2d 593, 95 S.Ct. 2550]). But these federal and California authorities equally recognize that along with the right of argument there exists discretion fairly to govern its scope. (*Id.*, at p. 862; *In re William F.*, *supra*, 11 Cal.3d at p. 255, fn. 5.) ■ Section 1093's allowance to the People of the right to conclude the argument—mirrored in the federal system by rule 29.1 of the Federal Rules of Criminal Procedure (18 U.S.C.)—is a rule soundly grounded in the premise that "[t]he prosecutor's burden of proving guilt beyond a reasonable doubt at the trial on the issue of guilt justifies his closing the argument as well as opening it." (*People* v. *Bandhauer* (1967) 66 Cal.2d 524, 530-531 [58 Cal.Rptr. 332, 426 P.2d 900].)[4] Indeed, the very presence of this constitutionally compelled (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]) unequal burden of proof imposed upon the prosecution refutes appellant's premise that due process requires exact equality among the procedural rights enjoyed by both prosecution and defense. We therefore conclude that the failure to allow defense counsel a second closing argument, in accordance with section 1093, subdivision 5, did not deny appellant due process of law. (Accord, *United States* ex rel. *Parsons* v. *Adams* (D. Conn. 1971) 336 F.Supp. 340, affd. *per curiam* (2d Cir. 1971) 456 F.2d 257, cert. den. (1972) 405 U.S. 1070 [31 L.Ed.2d 802, 92 S.Ct. 1519].)

---

[4]In the cited case, our Supreme Court held that given the absence of a similar burden in the penalty phase of a death case, "complete impartiality and fairness" dictated equality of argument in that phase and thus a defense right to a second argument there. (*Id.*, at p. 531.) But, as noted in the quoted text, the court did not perceive a similar result to be compelled in a guilt trial.

IV. Disposition.

The judgment is affirmed.

Thompson, J., and Beverly, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 22, 1984.

*Assigned by the Chairperson of the Judicial Council.