[No. A062235. First Dist., Div. Four. Oct. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DEE JOHNSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV and V.

COUNSEL

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POCHÉ, Acting P. J.**—In *People* v. *Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77] our Supreme Court examined both the nature of the sentence enhancement for personal use of a deadly or dangerous weapon required by Penal Code section 12022, subdivision (b), and also the standard for reviewing instructional error.[1] In this case we undertake the same examination for personal use of a firearm, the subject of section 12022.5, subdivision (a) (hereinafter section 12022.5(a)).

One of the ways in which a firearm can be used is "to display [it] in a menacing manner." (§ 1203.06, subd. (b)(3).) We read this language to mean that a defendant has personally used a firearm by a menacing display only if that display was intentional. Although the jury in this case was not so instructed, under the standard of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], on the facts of this case we conclude that the error was harmless.

## BACKGROUND

All of the charges arose out of a domestic dispute between defendant Michael Dee Johnson and his wife, Teresa, on May 18, 1992. The couple's infant daughter Meagan and two older children stayed with defendant when, in anticipation of a separation and without warning, Teresa left about a week earlier. During that week Teresa appears to have stayed nearby with a friend, and to have used methamphetamine, although the details of her usage are not certain.

Teresa returned to the house on May 18 to have dinner with defendant. The meeting was stressful. As Teresa moved to leave, a heated argument developed, in part over custody of Meagan. Once Teresa walked out of the house with the children, defendant "flipped out." He disabled Teresa's car, took Meagan from her arms, and went back into the house. Teresa followed.

About the time defendant was "screaming at me that we would all be better off dead if we couldn't be together," Teresa noticed that defendant had

---

[1]Statutory references are to the Penal Code unless otherwise indicated.

a gun in his trousers. Once inside the house, defendant pushed Teresa into a chair, knelt on the floor, and put his upper body on her lap so that she could not rise. Holding Meagan in one arm, the gun in his other hand, defendant repeated his "better off dead" statement. He called to the other children to come into the house, but Teresa told them to stay in the car. Defendant held the gun "like you would hold it to shoot," and pointed it in Teresa's direction if not actually at her. Defendant was "saying that he was going to kill me." According to Teresa, "it was made very clear to me that he wanted to shoot me."

Seeing a neighbor, Teresa yelled that defendant "had a gun, and . . . was going to kill us" and asked that police be called. Telling Teresa that he was "going to kill himself," defendant got up, went into another room with Meagan, and "he said I could pick her up out of a pool of blood." Hearing sirens, defendant "started yelling . . . now I had done it, that there was going to be a shoot out if the police came." Refusing Teresa's pleas for Meagan, defendant told her "the police wouldn't shoot . . . if he had the baby with him." When the sirens stopped, defendant "pushed Meagan at me, and I took her and ran out of the house." During this entire episode defendant kept the gun in his hand "as if he was going to fire it." Teresa told a group of officers what had happened.

Defendant was arrested after complying with the officers' order to come out of the house. Asked about a gun, defendant responded that he "threw it in the river." The gun, partially loaded, was found secreted in the laundry area at the rear of the house.

Defendant testified that he begged Teresa not to leave, but he did not restrain her from doing so except for not allowing her to take Meagan with her. According to defendant, what he did was "I asked [Teresa] to sit down, and I put my hand on her shoulder, . . . and I put Meagan in her lap, and I kneeled down in front of her." "I was kind of halfway in her lap, I guess." Teresa sat in the chair only a minute or so, and was not held down. As for the gun, defendant "kept it at my side" and pointed at the floor; it was never pointed at his wife. Defendant did not load the gun until the officers had arrived and Teresa and Meagan had left the house. He quickly decided "this is stupid," abandoned the gun, and surrendered to the waiting officers. He did admit that he got the gun after he had disabled Teresa's vehicle, but intended only to use it to end his own life. He did not threaten to kill Teresa or Meagan, only himself.

Having heard this evidence a jury found defendant guilty as charged of felony child endangerment (former § 273a, subd. (1)), felony false imprisonment (§§ 236-237), and being a past-convicted felon in possession of a

firearm (§ 12021). The jury found that defendant had personally used a firearm in the commission of these offenses (§ 12022.5(a)). The jury found defendant not guilty of the charged offense of assault with a firearm, but guilty of the lesser offense of brandishing a firearm (§ 417, subd. (b)). Finally, the jury found true an allegation that defendant had a prior serious felony conviction (§ 667, subd. (a)). After the trial court sentenced him to state prison for an aggregate term of 12 years, defendant perfected this timely appeal.

REVIEW

I-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI

Section 12022.5(a) specifies additional punishment for "any person who personally uses a firearm in the commission or attempted commission of a felony." A defendant is entitled to proper jury instructions regarding the meaning of a weapon use enhancement, particularly the concept of personal use. (*People* v. *Wims, supra*, 10 Cal.4th at p. 303.) Section 1203.06, subdivision (b)(3) states that personal use means "to display a firearm in a menacing manner, to intentionally fire it, or to intentionally strike or hit a human being with it." The lack of parallelism in the language of the section is the source of defendant's claim. Did the Legislature, by omitting the adverb "intentionally" before "to display . . . in a menacing manner" mean to provide that there is no intent required for display as distinguished from the intent required for use by firing or use by striking?

The definition of personal use given in section 1203.06 has been accepted as applicable to section 12022.5(a) and has been incorporated in CALJIC No. 17.19, which was given to the jury.[3] (See *People* v. *Cory* (1984) 157 Cal.App.3d 1094, 1104 [204 Cal.Rptr. 117] and decisions cited.)

Defendant argues that CALJIC No. 17.19 thus has a major gap: it makes no mention of the mental state which must accompany the menacing display

---

*See footnote, *ante*, page 1315.

[3]The jury here was instructed as follows:

"It is alleged in Counts 1, 2, 3 & 4 that the defendant personally used a firearm during the commission of the crimes charged.

"If you find the defendant guilty of one or more of the crimes charged, you must determine whether the defendant personally used a firearm in the commission of such felonies.

"The word 'firearm' includes a pistol. The 'firearm' need not be operable.

"The term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it.

variety of personal use. Thus, defendant maintains that the trial court has a sua sponte duty to modify the instruction by describing the requisite mental state. We agree with defendant's position and hold that personal use by menacing display, just as with firing or striking, must be done intentionally and that the jury must be instructed accordingly.

The Attorney General contends that because enhancement statutes such as section 12022.5(a) do not create crimes they have no scienter requirement beyond that required to commit the underlying offense. Our Supreme Court in *Wims* held that an enhancement is a mere "sentencing factor" or "penalty provision," but "not a substantive crime" which would trigger a defendant's federal right to trial by jury. (*People* v. *Wims, supra*, 10 Cal.4th 293, 304-309.) The Attorney General's argument goes beyond the holding of *Wims*. The Legislature can certainly establish a valid enhancement which does not have a mental element. But the converse is equally true—the Legislature can establish a valid enhancement which *does* have a mental element.

In *Wims* our Supreme Court concluded that in order to find true a personal use enhancement under section 12022, subdivision (b) a fact finder must conclude that, during the crime or attempted crime, the defendant "*intentionally* displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death." (*People* v. *Wims, supra*, 10 Cal.4th at p. 302, italics added.) The court went on to note that: "The evidence did not permit a conclusion that [defendant] displayed a knife *without a menacing intent*." (*Id.* at p. 316, italics added.) We need do nothing more than apply the same reasoning to a virtually identical statute.

The scope of our inquiry is concerned only with defendant's use of a firearm in the commission of the felony false imprisonment.[4] The relevant evidence is essentially undisputed. Defendant testified that he got the gun and stuck it in his pants when Teresa began leaving with the children. Defendant prevented that departure. With her car disabled and her daughter

---

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

"You will include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

[4] We have already determined in the unpublished portion of this opinion that instructional error requires reversal of the child endangerment count. No enhancement can attach to defendant's brandishing conviction because it is not a felony. And the enhancement found in connection with the section 12021 conviction must be stricken. (*In re Pritchett* (1994) 26 Cal.App.4th 1754, 1757-1758 [33 Cal.Rptr.2d 296].)

grabbed by an obviously agitated defendant, Teresa had little choice but to follow him back into the house. Once he, Teresa, and Meagan were back inside the house, defendant moved the gun to his hand. Whether the gun was loaded or operable is irrelevant. (*People* v. *Nelums* (1982) 31 Cal.3d 355, 359 [182 Cal.Rptr. 515, 644 P.2d 201].) The gun was in defendant's hand while he knelt beside Teresa and again asked her to stay. Clearly it was seen by Teresa. Its proximity to her infant daughter would effectively stifle any impulse Teresa might have had to escape. As shown by both her testimony and that of her neighbor, Teresa was terrified of what defendant might do with the gun. That fear, for herself and her daughter, effectively glued Teresa to her chair. No other purpose could be served by defendant moving the gun from his waistband to his hand. In short, the gun would and did ensure that Teresa became a captive audience to defendant's renewed pleas for her not to leave. If defendant did point the gun at Teresa or threaten its actual use, these circumstances would only be further constraints holding Teresa in place.

In light of this record, there is no reasonable probability that a properly instructed jury would conclude that defendant did not use a firearm—in short that defendant's moving the gun from his pants' waistband to his hand was an intentional act of menacing display of the gun.[5] (*People* v. *Wims, supra*, 10 Cal.4th at p 316.)

The felony child endangerment conviction is reversed. The personal use enhancement to the firearm possession charge is stricken. The judgment is affirmed in all other respects.

Perley, J.,* and Reardon, J., concurred.

Petitions for a rehearing were denied November 1, 1995, and the petitions of both appellant and respondent for review by the Supreme Court were denied January 18, 1996.

---

[5] We would reach the same conclusion if, as defendant argues, the trial court had the sua sponte duty to instruct that defendant could be found only to have been armed with the gun (§ 12022, subd. (a)). (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 683-685 [193 Cal.Rptr. 614].)

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.