Filed 8/1/13  P. v. Martinez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ELI JOSEPH MARTINEZ,<br><br>Defendant and Appellant. | F065083<br><br>(Super. Ct. No. 1416316)<br><br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Marie Sovey Silveira, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Tiffany J. Gates, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Kane, Acting P.J., Franson, J. and Peña, J.

**PROCEDURAL BACKGROUND**

A jury convicted defendant Eli Joseph Martinez of attempted robbery (Pen. Code,[1] §§ 664, 211), second degree burglary (§ 459), and found true an allegation he personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)). The trial court sentenced defendant to a total of 11 years 4 months in prison, consisting of 16 months for attempted robbery plus a consecutive 10-year term for the firearm use enhancement. Defendant timely filed a notice of appeal.

Defendant asks this court to strike the firearm use enhancement, arguing the evidence presented at trial was insufficient to support the allegation because his gun-related conduct was not witnessed by, nor directed at, anyone. We find the evidence was sufficient to support the jury's finding.

**FACTUAL BACKGROUND**

On the evening of March 19, 2010, Sarbjit Singh and Mohamed Qarqat were working at the Super Liquor store in Modesto. Singh was working at the store's front counter while Qarqat bagged ice in the back room. The store was equipped with several surveillance cameras that captured the following events, and the footage was played for the jury. At approximately 10:40 p.m., two individuals, later identified as Kyle Johnson and defendant, walked into the store with their faces covered. Defendant proceeded to walk to the back room where Qarqat was located while Johnson approached the store's front counter, pointed a gun at Singh and commanded "don't move." Singh immediately picked up his own firearm from under the counter, shot Johnson, and fired additional shots at defendant. Johnson fell to the floor, dropping his firearm, while Singh fled to the Laundromat next door. Johnson ultimately died from his injuries.

In the backroom, Qarqat came face-to-face with defendant who appeared to be frightened. Defendant grabbed onto Qarqat and implored Qarqat to tell Singh that he "gave up," unaware that Singh was no longer in the store. Qarqat said nothing and

---

[1]All references are to sections of the Penal Code unless otherwise indicated.

instead pulled away from defendant, quickly exited the store, and joined Singh at the Laundromat. Shortly thereafter, Qarqat returned to the store to trigger the store's alarm and retrieve Singh's cellular phone. A few seconds passed before defendant slowly crept through an aisle toward the store's front counter with his hands up in the air. As he arrived at Johnson's limp body, defendant bent down to grab the firearm initially used by Johnson. Concurrently, Qarqat returned to the store yet again, but only to peek through the store's window. Qarqat witnessed defendant bending down and grabbing the gun, causing Qarqat to immediately run back to the Laundromat out of fear that defendant might "come up to [him] and get [him] or something." As defendant bent down to grab the gun, his back was facing the store's window. Defendant testified he assumed the store employees could not have gone very far and picked up the gun out of fear he might be shot, but that he had no intention of using the gun.

With gun in hand, defendant next nudged Johnson, who was utterly unresponsive. Defendant turned to face the store's front entrance, the same entrance through which Singh and Qarqat fled, lifted the gun, and pointed it at the entrance using both hands. Defendant then dropped the gun to his side and quickly exited the store.

Singh never saw defendant after his initial entrance into the store, while Qarqat last saw defendant as he was bending down to grab Johnson's gun. The surveillance video serves as the only evidence of defendant holding the gun with both hands while aiming it at the store's front entrance.

## DISCUSSION

Defendant contends the evidence was insufficient to support the personal use of a firearm allegation because his gun-related conduct was not directed at, nor witnessed by, anyone. Rather, he argues, the evidence supports only a finding that he was armed during the commission of the offense. We disagree.

Our task is to review the entire record, in the light most favorable to the judgment, in order to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  We must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Rayford* (1994) 9 Cal.4th 1, 23.)

Section 12022.53, subdivision (b) specifies an additional punishment for "any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm."  Personal use of a firearm has been interpreted to mean one who intentionally displays the firearm in a menacing manner, strikes someone with it, or fires it. (§ 1203.06, subd. (b)(2); *In re Tameka C*. (2000) 22 Cal.4th 190, 197; *People v. Johnson* (1995) 38 Cal.App.4th 1315, 1319; CALCRIM No. 3146.)  In contrast, armed with a firearm has been defined as to knowingly carry or have a firearm available for offensive or defensive use.  (§ 1203.06, subd. (b)(3); *People v. Bland* (1995) 10 Cal.4th 991, 997; CALCRIM No. 3131.)

In comparing the terms "use" and "armed," the term "use" has been given a broad definition.  Indeed, our Supreme Court has explained that the "obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed."  (*People v. Chambers* (1972) 7 Cal.3d 666, 672.)  Thus in defining the term "use" the court has noted that "[a]lthough the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies.  'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.'  (Webster's New Internat. Dict. (3d ed. 1961).)"  (*Ibid*.)

In *People v. Granado* (1996) 49 Cal.App.4th 317 (*Granado*), the court addressed a question similar to the one posed here.  There, the defendant and his cohort approached two victims and demanded money.  During the attempted robbery, just as the defendant produced a gun from his waistband, one of the victims fled and never saw the weapon.  As the victim fled he was chased by the defendant's machete-wielding cohort.  The

4.

defendant was convicted of attempted robbery of both victims and of personally using the firearm against both. (*Id*. at pp. 320-321.) The defendant argued the evidence was insufficient to establish that the victim was aware that a gun was present. (*Id*. at p. 326.) In determining "the legal effect of [displaying a firearm] if one of the victims does not see the gun or otherwise know of its presence" (*id*. at p. 320), the court explained that "use" of a firearm is established where a defendant engages in gun-related conduct coupled with the intent that the gun-related action facilitated the commission of a crime. (*Id*. at pp. 328-329.) The court rejected the argument that the victim must see the gun-related conduct to support a finding that the defendant used a gun. As the court explained, it is of no import that "the victim is not cowed, or turns to run before seeing the gun or realizing it is present," so long as there exists evidence allowing a juror to reasonably find that the defendant intended for his gun-related action to facilitate the commission of a crime. (*Ibid*.)

Defendant acknowledges *Granado* but, citing a panoply of cases, argues that for a use to be upheld, the gun-related conduct must be "directed *at* someone." To support his proposition, he relies upon *People v. Hays* (1983) 147 Cal.App.3d 534, 548 (*Hays*) and *Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993. We find these cases distinguishable.

In *Hays*, the defendant, with a sawed-off rifle strapped to his body, crashed through the ceiling of a drugstore he intended to rob. (*Hays*, *supra*, 147 Cal.App.3d at p. 539.) The gun was in full view of two store employees while the defendant committed the underlying crime. (*Ibid*.) However, there was no evidence the defendant ever handled the rifle, let alone "display[ed] it in a menacing manner." (*Id*. at p. 544.) The *Hays* court reviewed several opinions regarding the use of weapons and observed,

> "[O]f the 14 cases finding use enhancement proper, 12 of them show the defendant aimed, cocked, or fired the weapon [in the presence of the victim]. The 13th … found a use enhancement where the gun was in the hands of the defendant while he verbally threatened the robbery victims. The 14th … did not involve touching the weapon but exposing it in a

5.

menacing fashion accompanied by words threatening a more violent use."
(*Hays*, *supra*, at p. 548.)

The court struck the use enhancement because, unlike the defendants in the surveyed cases, the defendant in *Hays* only "passively displayed" the rifle, an act more akin to armed cases than use cases. (*Id.* at pp. 548-549.)

This principle was reiterated in *Alvarado v. Superior Court*, *supra*, 146 Cal.App.4th 993. In *Alvarado*, the defendant walked into a convenience store, commanded the clerk to call police, and stated he was on a suicide mission. After the clerk called police, he noticed a shotgun resting on a candy rack about one foot away from the defendant. (*Id*. at pp. 997-998.) The gun remained in that position until it was retrieved by police after the defendant's arrest. As in *Hays*, there was no evidence of the defendant brandishing or displaying the shotgun in a menacing manner, nor did any victim or third party witness the defendant hold or pick up the shotgun or even draw attention to its presence. Relying on *Hays*, the court held that the record showed no gun-related conduct beyond passive exposure of the gun, circumstances under which a personal use of a firearm enhancement cannot stand. (*Id*. at p. 1005.)

From these cases, as well as from a number of other cases discussing the use of a weapon, defendant argues that a use may not be established unless a defendant engages in gun-related conduct that is directed at a person. We disagree. As the court explained in *Granado*,

> "The litmus test for the distinction [between use and armed] is functional: did the defendant take some *action* with the gun *in furtherance of the commission* of the crime? If so the gun was 'used,' and the more severe penalty … applies. If, on the other hand, the defendant engaged in no weapons-related conduct, or such conduct was incidental and unrelated to the offense, no 'use' occurred, and only the lesser enhancement … applies."
> (*Granado*, *supra*, 49 Cal.App.4th at p. 324, fn. 7.)

We agree with *Granado* and hold that the dividing line between "use" and "armed" is determined by whether the defendant's gun-related conduct constitutes an act in furtherance of a crime or merely a passive and inadvertent exposure of the gun. It is

6.

irrelevant whether the gun-related conduct was directed at or witnessed by someone. This interpretation is in accord with our Supreme Court's mandate that the term "use" be broadly construed. (*People v. Chambers*, *supra*, 7 Cal.3d at p. 672.) Further, using this analysis, it is clear that the finding of simple arming in *Hays* and *Alvarado* resulted from the fact the defendants there simply did not engage in any gun-related conduct. (*Hays*, *supra*, 147 Cal.App.3d at pp. 544, 548-549; *Alvarado v. Superior Court*, *supra*, 146 Cal.App.4th at p. 1005.)

The facts of the present case are unlike *Hays* and *Alvarado*, where there was only a passive display of the weapon and no gun-related conduct to speak of. Here defendant grabbed the gun from the floor, gripped it with two hands, and pointed it at the door. Based on his testimony, defendant feared the victims might be waiting outside ready to shoot him. Thus, defendant engaged in gun-related conduct while possessing the intent to facilitate commission of the underlying crime; nothing more is needed for the firearm enhancement to stand.

Defendant's argument that the gun-related conduct must be directed at or witnessed by someone erroneously fails to distinguish a victim's knowledge or observations as *evidence* of use and the victim's knowledge as an *element* of use. (*Granado*, *supra*, 49 Cal.App.4th at p. 326.) It is apparent that in some instances the victim's perceptions may well be the only evidence of weapons-related conduct and to go beyond this reality would make the victim's state of mind an element of the enhancement without any statutory or policy basis for doing so. (*Ibid.*)

The use enhancement statute was intended to deter a defendant from "bringing a gun 'into play'" during the commission of a felony because this increases the likelihood of violent injury, not only through "an intentional act by the victim or a third party, *but through an impulsive or inadvertent act by the defendant*." (*Granado*, *supra*, 49 Cal.App.4th at p. 327, italics added.) The threat of an inadvertent or impulsive act by the defendant remains even where no one is present to witness the gun-related conduct. Thus, to excuse a defendant who deployed a firearm during the commission of a felony

7.

"merely because the victim lacked actual knowledge of the gun's deployment would limit the statute's deterrent effect for little if any discernable reason." (*Ibid.*)

Defendant further argues that, as a matter of common sense, the term "menacing display" necessarily requires evidence of actual or potential fear produced by the gun-related conduct on the part of the victim or third party, an impossibility without victim or third party knowledge of the firearm's presence. However, this argument ignores the definition of "use" as provided in *Chambers* as "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." (*People v. Chambers*, *supra*, 7 Cal.3d at p. 672.)

Defendant's argument finds some support in *Chambers*'s statement that "[a]lthough the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies." (*People v. Chambers*, *supra*, 7 Cal.3d at p. 672.) However, we note that *Granado* addressed this very issue, explaining that

> "[i]n light of the decision as a whole, however, we do not believe the quoted sentence is properly understood to require proof of actual fear or knowledge. It is more reasonably understood to mean that the conduct must be such as 'produces a fear of harm or force' on the part of a hypothetical, reasonable observer—such as a juror looking back at the event through the lens of the evidence at trial." (*Granado*, *supra*, 49 Cal.App.4th at p. 327.)

We agree with this analysis. Not only would defendant's proposed interpretation contravene the broad construction of use as required by *Chambers*,[2] but it would also

---

[2]Courts have consistently given "use" a broad construction. (*People v. Johnson*, *supra*, 38 Cal.App.4th 1315, 1320-1321 [affirming use enhancement where defendant never pointed gun at anyone]; *People v. Jacobs* (1987) 193 Cal.App.3d 375, 379, 381-382 [defendant's words letting victim know he had a gun followed by audibly cocking the gun in his pocket constituted use even though victim never saw the gun]; *People v. Colligan* (1979) 91 Cal.App.3d 846, 851 [use established where defendant opened shirt to show victim his gun and implicitly threatened victim even though defendant never touched the gun].)

require engrafting an additional element onto the definition of personal use, which we decline to do.

We note the recent decision in *People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1405, likewise did not interpret *Chambers* as requiring evidence of actual or potential fear on the part of a victim or third party as a result of a defendant's gun-related conduct. There, the defendant and his cohort committed a drive-by shooting. In his statement to police, the defendant explained he pointed a shotgun out of the car's window and pulled the trigger, but the gun did not fire. His cohort also shot from the same window, injuring two victims. There was no evidence that either victim saw the defendant point the shotgun. (*Id*. at pp. 1402-1404.) In rejecting the defendant's argument that the evidence was insufficient to support the gun use enhancement, the court held that *Chambers* expanded the type of conduct that qualifies as personal use of a firearm (i.e., conduct which actually produces harm as well as conduct that produces only a *fear* of harm) rather than limiting it to conduct that produces harm in a victim or third party. (*Thiessen*, *supra*, at p. 1405.) In line with its interpretation of *Chambers*, the court explained that the defendant's gun-related conduct emboldened his cohort to commit the crime, and he therefore *used* the firearm to facilitate the commission of the crime despite the fact that the victim never saw or even knew the defendant had a gun. (*Thiessen*, at p. 1404, italics added.)

*Thiessen* further rejected the argument that a victim had to be menaced in order for the gun use enhancement to be applicable. We agree with this reasoning.

It is well established that a jury's use finding will stand where there is substantial evidence of a defendant engaging in gun-related conduct with the intent to facilitate the commission of a crime. Victim and third party impressions and observations may provide the requisite evidence of a defendant's gun-related conduct and facilitative intent and commonly provide the only evidence, but this has never been held to be an element of the crime; in fact, to hold otherwise undercuts the statute's deterrent intent.

Guided by the above stated principles, we now turn to the question of whether there was substantial evidence presented at trial so as to allow a reasonable trier of fact to infer that defendant engaged in gun-related conduct with the intent to facilitate the attempted robbery of which he was convicted.[3]

All that is needed to uphold a use enhancement is substantial evidence that the defendant engaged in any gun-related conduct with the intent to facilitate the commission of the underlying crime. Although defendant's gun-related conduct was not witnessed by a victim or third party, surveillance footage shows defendant engaging in a menacing display of a firearm by picking up the gun from the ground, grasping it with two hands, and pointing it at the door through which he escaped seconds later. From this action, the jury could infer that defendant in fact displayed the gun in a menacing manner.

Defendant did not simply pick up the gun and run from the store. Rather, he deliberately pointed the gun at the door that the victim had escaped from only moments earlier. It is inferable from the evidence that he did so to deter anyone from interfering with his escape from the store. By doing so, he clearly engaged in a display of the weapon that was intended to menace anyone standing on the other side of the door. That no one actually witnessed the action firsthand did not lessen defendant's action or intent.

Indeed, defendant testified that he assumed one of the victims would likely be near the front door, and he feared he would be shot once he stepped outside, thus impeding his escape. By pointing the gun at the door before his exit he used the gun to facilitate his escape. The jury could infer that not only did defendant embolden himself to make his getaway, but he intended to deter anyone from preventing his escape. Thus, the

---

[3]Briefly, for purposes of use enhancement, robbery and similar crimes "continue beyond the time of the physical conduct constituting the offense until the perpetrator has reached a place of temporary safety. Accordingly, one who employs a firearm at any time on the continuum between the initial step of the offense and arrival at a place of temporary safety is subject to the enhancement." (*People v. Taylor* (1995) 32 Cal.App.4th 578, 582.) Therefore, despite the fact that Singh and Qarqat had fled, the attempted robbery continued until defendant fled and reached a place of temporary safety, and any gun use within that period of time is subject to the enhancement. Indeed, defendant does not argue otherwise.

10.

surveillance video and defendant's own testimony provide substantial evidence for a rational juror to find that defendant engaged in gun-related action with the intent of facilitating his escape, thereby furthering the commission of the underlying crime.

## DISPOSITION

The judgment is affirmed.