Filed 8/16/16  P. v. Arbee CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LOUIS W. ARBEE,<br><br>        Defendant and Appellant. | A144931<br><br>(City & County of San Francisco Super. Ct. No. 223022) |

Defendant Louis W. Arbee appeals a judgment convicting him of robbery with an enhancement for his use of a firearm and sentencing him to 13 years eight months in prison. On appeal, defendant challenges the sufficiency of the evidence in support of his conviction, argues that the trial court made prejudicial evidentiary and instructional errors, and asserts that the prosecutor committed prejudicial misconduct during closing arguments. We shall affirm.

**Factual and Procedural Background**

Defendant was charged with first degree robbery with an enhancement allegation for personal use of a firearm (Pen. Code,[1] § 211, § 12022.53, subd. (b)); unlawful possession of a firearm (§ 29820, subd. (b)); carrying a concealed firearm (§ 25400, subd. (a)(2)); carrying a loaded weapon (§ 25850, subd. (a)); wearing a mask as a disguise (§ 185); and resisting arrest (§ 148, subd. (a)(1)).

The following evidence was presented at trial:

---

[1] All statutory references are to the Penal Code unless otherwise noted.

On March 22, 2014, at 10:23 p.m., the victim[2] called the police to report that his 49er hat and cell phone had been taken from him while exiting a San Francisco Muni transit bus. The tape recording of his 911 call was played for the jury. According to his recorded account of the incident, three "black dudes, with like ski masks" took his hat and his IPhone while he was exiting from the rear of the bus. He said that "they had a gun" and that the three remained on the bus after he got off. He repeatedly stated he did not want to meet with police. He just wanted to ensure that the men did not hurt anyone. He did, however, give the dispatcher his girlfriends' cellphone number and agree to speak to the police if they had any further questions.

After receiving the report of the incident, several officers responded to Sixth and Bryant Streets where the bus had been stopped. Officers located and arrested the three suspects. Officers observed a black handgun in defendant's waist band and seized it. The handgun seized from defendant was loaded and in working condition. From defendant's coat, officers removed a 49er hat matching the victim's description. The other two suspects taken into custody were juveniles. A second loaded gun was retrieved from one of the juveniles. No phone matching the victim's description was found on either defendant or the other two suspects.

After defendant's arrest, an officer was dispatched to the victim's home to transport him to the police station to identify the suspects. The officer testified that the victim reported that he was approached by three men as he stood waiting to exit the bus. One of the men took his hat from behind him, and when he turned to see who had taken it, the man took the ear buds from his ears along with his cell phone. The victim told the officer that when he reached to take his phone back, the man pulled a gun and said "Don't try it." The victim told the officer he could not see the barrel of the gun because it was tucked into the man's sweater. The victim said the person was wearing a mask so he was unable to see his facial features. The victim claimed he ran out of the bus "in fear of his life." The officer also testified that the victim was "very scared; so much so that he

---

[2] The victim did not appear at any court proceeding related to this matter.

didn't want to initially complete the cold show. He made statements like "I don't want to do this because I ride the bus every day with my daughter and I'm afraid they are going to retaliate."

Over defense objections, recordings of six jailhouse phone calls were admitted into evidence. In one call defendant complained about being in custody for simply taking another man's hat. In another call, he assumed he was in jail because of the hat, then added "But they ain't seen me show nothing. I had the little one, they couldn't see nothing." In a different call he stated "All I got to beat is the gun. And I'm comin' home. . . . The gun ain't showin.' . . . I just got caught with it. That's the only ugly thing."

The entire incident was captured on a surveillance camera inside the bus and the videotape was played for the jury. The video of the incident shows the victim facing the back door of the bus as defendant approached from behind. As the victim started to exit, defendant grabbed his hat. The victim then turned to face defendant and reached towards him. Defendant appeared to transfer the hat to his right hand and reach towards his waist with his left hand as he squared to face the victim. The victim immediately put his hands up and backed away from defendant and off the bus while continuing to display his hands to defendant. The video did not show anyone taking the victim's earbuds or phone.

The jury found defendant guilty on all counts except for resisting arrest. Following the denial of his motion for new trial, defendant was sentenced to a total of 13 years eight months in prison. Defendant timely filed a notice of appeal.

**Discussion**

1. *The admissible evidence overwhelmingly supports defendant's conviction such that any evidentiary errors are harmless beyond a reasonable doubt*.

Prior to trial, defendant moved to exclude evidence of all the victim's statements made to the police, except the 911 call, on the grounds that the statements were inadmissible hearsay and their admission would violate his right to confrontation under *Crawford v. Washington* (2004) 541 U.S. 36. The court excluded the victim's oral statements made at the "cold show" and the victim's subsequent written statement, but the court allowed the police officer to testify to the victim's description of the incident, as

3

set out above, that the victim related during his initial interview. The trial court ruled that the statements were admissible under the spontaneous statement exception to the hearsay rule (Evid. Code, § 1240) and that admission of the hearsay statements would not violate defendant's constitutional rights because the statements were made during an "ongoing emergency" and, thus, they were not testimonial. Defendant contends the trial court erred in admitting this hearsay evidence.

Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." The officer testified that he went to the victim's home about 30 minutes after the crime was reported. When the officer arrived, he obtained a "briefing quickly of what had happened" from the victim which included the relevant statements. The officer clarified that the purpose of his interview was to "figure out if he was the victim or not" before transporting him for the cold show. Defendant argues that the victim's statements were not made spontaneously while he was under the stress of excitement caused by the crime. He suggests that they were made "after the event when [the victim] was at home with his father and after he had time to contemplate, contrive and misrepresent the facts" and that they were "made to police in direct response to their request for his participation in identifying the suspects in custody."

Whether or not the victim's statements qualified for admission under the Evidence Code exception for a spontaneous utterance, the statements were testimonial and thus inadmissible under *Crawford* and its progeny. In *Crawford*, the United States Supreme Court held that the confrontation clause of the Sixth Amendment permits admission of "testimonial" hearsay only if the declarant is unavailable and there has been a prior opportunity to cross-examine the declarant. (*Crawford v. Washington, supra*, 541 U.S. at p. 68.) "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when

4

the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822.) More recently in *Michigan v. Bryant* (2011) 562 U.S. 344, 357-358 (*Bryant*), the United States Supreme Court advised: "The basic purpose of the Confrontation Clause was to 'targe[t]' the sort of 'abuses' exemplified at the notorious treason trial of Sir Walter Raleigh. [Citation.] Thus, the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial. [Citation.] Even where such an interrogation is conducted with all good faith, introduction of the resulting statements at trial can be unfair to the accused if they are untested by cross-examination. Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial. When, as in *Davis*, the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the Clause."

In *People v. Blacksher* (2011) 52 Cal.4th 769, 813 our Supreme Court interpreted *Bryant* to require consideration of a number of factors to determine the primary purpose for which a statement is made to a police officer: (1) "The court must objectively evaluate the circumstances of the encounter along with the statements and actions of the parties" to determine "the *primary* purpose of both officer and declarant." (*Id*. at pp. 813-814.) (2) The court must objectively "consider whether an ' "ongoing emergency" ' exists, or appears to exist, when the statement was made." (*Id*. at p. 814.) (3) "Whether an ongoing emergency exists is a 'highly context-dependent inquiry.' " An emergency may exist even after the initial threat to the victim is over depending on the type of weapon involved. (*Ibid*.) (4) "The medical condition of the declarant is a relevant consideration, as it bears on both the injured declarant's purpose is speaking and the potential scope of the emergency." (*Ibid*.) (5) "A nontestimonial encounter addressing an emergency may

5

evolve, converting subsequent statements into testimonial ones." (*Ibid*.) (6) "Finally, regardless of the existence of an emergency, the informality of the statement and the circumstances of its acquisition are important considerations." (*Id*. at p. 815.)

Here, the record does not establish the existence of an "ongoing emergency" at the time the statements were made. The victim was safely home and away from the defendant. Defendant and the two other suspects were in custody, their weapons in police possession. Although the statements were not made at the police station, they were not "informal" in the sense used in prior cases. (See e.g. *Michigan v. Bryant*, *supra*, 562 U.S. at p. 366 [questioning that "occurred in an exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion" supports finding that statements were not testimonial].) Most importantly, the officer repeatedly emphasized that he was dispatched to the victim's home to transport the victim to the police station so that he could identify the defendant. Under such circumstances, the victim's statements were testimonial and their admission erroneous.

Defendant also contends the court erred in admitting his recorded jailhouse phone calls as they were irrelevant and extremely prejudicial. To the extent that defendant admitted in the recorded conversations that he had taken the hat and was carrying a firearm, this evidence undoubtedly was relevant and admissible. Although the recordings are littered with obscenities and racial epithets, the language is not so shocking or offensive as to make the trial court's admission of those recordings an abuse of discretion. (*People v. Hines* (1997) 15 Cal.4th 997, 1044-1045.) The court's failure to redact other statements in which defendant expressed anger towards the victim and the bus driver for reporting his crime to the police is more questionable. Defendant repeatedly discusses in the recorded conversations whether the bus driver or the victim called the police or "snitched." In one of the recorded conversations he states, referring to the bus driver, "I always see his bitch ass" and "he better hope I get a car by the time I get out." In response, the other participant in the call says, "Yeah and OR you out. Hope them fucking guns is all clean, no bodies on that thing." With respect to the victim, defendant suggested that they will know if he's the snitch because "If he did he's going to

6

come to court." There was little if any probative value in these statements and their potential prejudice is clear. The failure to redact those statements may well have been an abuse of discretion.

Although the erroneous admission of the jailhouse recordings is subject to the *People v. Watson* (1956) 46 Cal.2d 818, 836 standard for harmless error, the confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24. Accordingly, " ' " '[w]e ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error.' " ' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 873.) Because the entire interaction between defendant and the victim was distinctly and clearly recorded on video cameras on the bus, the evidence of defendant's guilt is overwhelming. There can be no reasonable doubt that the jury would have convicted defendant of both robbery and the gun enhancement regardless of any of the evidence that may have been improperly admitted.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The victim's fear "do[es] not need to be extreme for purposes of constituting robbery." (*People v. Ramos* (1980) 106 Cal.App.3d 591, 602, overruled on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16.) "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his property." (*Ramos,* pp. 601-602.)

The parties agree that the initial taking of the victim's hat did not involve the use of force or fear. The Attorney General argues, and we agree, that the theft became robbery when the victim turned to face defendant and defendant appeared to show the victim a gun in his waistband. The victim's reaction, as seen on the video, unmistakably reflects his fearful retreat with hands raised when defendant appears to display a gun in his waistband. Defendant's suggestion that the victim was not afraid because he was heard to be "quite calm and collected on the [911] tape, with no hint of fear in his voice" is not supported by the record. The recording reflects heavy breathing and cracking in the

7

victim's voice, indicating a heightened emotional state as would follow a fearful event. Even without the victim's hearsay statement that he was afraid for his life, the contemporaneous direct evidence certainly would have led to a finding that the victim was placed in fear.

Likewise, the evidence clearly supports the jury's true finding on the firearm enhancement. Section 12022.53, subdivision (b) provides for additional punishment for any person who, in the commission of specified offenses or attempts, "personally uses a firearm." As defendant notes, " 'the Legislature drew a distinction between being *armed* with a firearm in the commission of a felony and *using* a firearm in the commission of a felony, and it made firearm use subject to more severe penalties.' " (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1000.) "Whether a gun is 'used' in the commission of an offense—'at least as an aid'—is broadly construed within the factual context of each case. There are no precise formulas, or particular fact patterns to follow, to determine whether a gun has been 'used' for purposes of a sentence enhancement." (*Id*. at p. 1102, fn. omitted.) There is no dispute, however, that " 'when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure.' " (*Id*. at pp. 1003-1004.)

Here, the video clearly shows that defendant's conduct stopped the victim in his tracks and caused him to put his hands up and retreat. It is also undisputed that defendant had a gun tucked into his waistband at the time of his arrest. Although the gun is not visible in the video, the victim told the police in the 911 call that defendant had a gun. This evidence overwhelmingly supports the finding that defendant used the gun in the commission of the robbery.

Accordingly, the improper admission of the challenged evidence was harmless beyond a reasonable doubt.

2.      *There was no error in failing to instruct on a lesser included offense.*

A trial court has a duty to instruct on a lesser included offense when the offense is supported by evidence that is " 'substantial enough to merit consideration' by the jury." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) " 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*Ibid*.) Defendant contends that because the evidence of the victim's fear was "ambiguous at best" the court erred in failing to instruct of the lesser included offenses of grand theft of a person and petty theft. However, given the evidence discussed above, the jury could not reasonably have found an absence of fear and there was no basis for an instruction on the lesser offense. Were there any error, it undoubtedly was harmless.

3.      *The prosecutor did not commit prejudicial misconduct in closing argument.*

In his closing argument, defendant emphasized the victim's absence from trial arguing, "It is offensive to me to have to be here arguing on a charge that they have known since day one they can't prove . . . because we don't have the victim. How do you prove that in [the victim's] head he's in fear when you don't have him to tell you about it? . . . [¶] . . . And just because [the prosecutor] comes up here and says, this means I'm in fear. This only means I'm in fear if [the victim] comes in here and tells us that." In rebuttal the prosecutor argued, "The only evidence we have that [the victim] is not here is that he said he was too fearful to get involved in this stuff, because he doesn't want to get identified." Defendant contends the prosecutor's rebuttal argument amounts to prejudicial misconduct.

Defendant acknowledges that he did not object to this argument in the trial court and that, generally, the failure to object forfeits a claim of prosecutorial misconduct on appeal. He asserts, however, that we should review the argument on the merits under an alleged "exception to the general rule of forfeiture . . . 'where the case is closely balanced, there is grave doubt of the defendant's guilt, and the misconduct is such as to contribute materially to the verdict.' " Defendant also argues that his counsel's failure to

object amounts to ineffective assistance of counsel. As discussed above, we do not agree with defendant's contention that "a close question was presented as to appellant's guilt on the robbery count and gun use enhancement." Nonetheless, in light of defendant's ineffective assistance of counsel claim, we briefly address the merits of his claim.

Defendant contends there is no factual basis for the prosecutor's rebuttal statement. He argues, essentially, that while the evidence establishes that the victim did not want to make a report to the police or participate in the cold show, there is no evidence regarding why he did not appear at trial. A prosecutor, however, "is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) Here, in the 911 call, the victim repeatedly states that he does not want to make a statement to the police. He also said that he rode that bus route regularly home from work. This evidence supports the reasonable inference drawn by the prosecutor that the victim did not testify at trial because he was afraid and did not want to be identified.

Moreover, the prosecutor's statement did not, as defendant suggests, "excuse [the victim's] presence" or excuse the prosecution "from presenting evidence crucial to the proof of the elements of the offenses." As defendant notes, the prosecutor relied on "the video surveillance tape of the theft and urged the jury to interpret [the victim's] reaction, upon turning around to see [defendant], as a demonstration of fear." Although defendant vigorously contested the sufficiency of that evidence before the jury, we agree with the prosecution that the surveillance video amply established the commission of a robbery. Any potential misconduct was harmless.[3]

### Disposition

The judgment is affirmed.

---

[3] In light of the above discussion, we reject defendant's claim of cumulative error. We likewise find no error in the trial court's denial of defendant's motion for new trial based on the erroneous admission of the victim's hearsay statements, erroneous denial of lesser included offense instructions; and the alleged prosecutorial misconduct.

10

_____

Pollak, Acting P.J.

We concur:


_____

Siggins, J.


_____

Jenkins, J.