Filed 8/25/20  P. v. Morgavo-Chasteen CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN RICHARD MORGAVO-CHASTEEN,<br><br>    Defendant and Appellant. | 2d Crim. No. B296360<br>(Super. Ct. Nos. 18CR04746<br>& 1499205)<br>(Santa Barbara County) |

Stephen Richard Morgavo-Chasteen appeals from the judgment after the jury convicted him of second degree robbery (Pen. Code,[1] §§ 211, 212.5, subd. (c)) and found that he used a deadly weapon in the course of the robbery (§ 12022, subd. (b)(1)). The jury also found true the allegations that he suffered a prior strike conviction (§ 667, subds. (d)(1), (e)(1)), a prior serious

---

[1] Unless otherwise noted, all subsequent statutory references are to the Penal Code.

felony conviction (§ 667, subd. (a)(1)), and a prior prison term (§ 667.5, subd. (b)). (Case no. 18CR04746.) The trial court sentenced him to 13 years in state prison. He received a concurrent two-year prison term for violation of probation. (Case no. 1499205.)

He contends: (1) the prosecution and the court misled the jury by stating that strikes were not an issue, (2) the evidence was insufficient to establish use of a deadly weapon, (3) the trial court erroneously instructed the jury regarding use of a deadly weapon, (4) the one-year enhancement for a prior prison term must be stricken, and (5) the abstract of judgment incorrectly shows fines imposed in the probation violation case. We strike the one-year enhancement, order the abstract of judgment corrected, remand for resentencing, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Motions for mistrial*

The trial court ruled that three prior cases in which Morgavo-Chasteen used force when confronted by store employees regarding his involvement in thefts were admissible to establish motive, intent, common scheme, and plan. (Evid. Code, § 1101, subd. (b).) The court also tentatively ruled they would be admissible to impeach Morgavo-Chasteen's credibility if he testified. One of these prior cases was also the basis for the prior strike and prior serious felony enhancements. Because evidence of the convictions would be admitted at trial, the defense did not move to bifurcate trial on the enhancements.

The court ordered that neither side refer to punishment or a "strike," subject to reconsideration if Morgavo-

2

Chasteen testified that he did not use a knife because he knew it would subject him to increased punishment.

During jury selection, defense counsel suggested Morgavo-Chasteen might have previous convictions for robbery and theft, and asked prospective jurors how that would affect them.

Also during jury selection, the prosecutor told the prospective jurors not to consider punishment. She discussed an excused juror who said he did not report a relative to police because the relative potentially had three strikes and would be sentenced to life in prison. She continued, "So I know he brought that up and people might be thinking, oh, is this a strike case, is this a three strikes case. That is not at all for you to consider. I can even say, this is not a three strikes case."

The court sustained an objection and told the prospective jurors, "Forget about the strike thing, you're not to consider it, and everybody agrees they will not consider punishment including, quote, 'strikes,' relative to your decision on guilt or innocence." The court inquired whether all the jurors understood that they were not to consider punishment, and all the jurors nodded their heads.

A juror expressed his moral opposition to some punishment issues. He stated, "Seems like the cat is out of the bag." The court responded, "Sort of," and asked if the juror could set aside the issue of punishment in determining guilt.

Morgavo-Chasteen moved for a mistrial on the grounds that the jury had been told it was not a three strikes case. The prosecutor acknowledged that she should not have mentioned strikes. The court denied the motion for mistrial, noting that the prosecutor's statement was accurate because it

was a two strikes case, and the defense was not prejudiced by the statement.

Another prospective juror said she would feel bad if there were a three-strike consequence, but she would do what she was instructed to do.  The court repeated that the jurors were not to consider punishment in determining whether the prosecution proved its case.  The court added, "There's no strike issue here at all."

Morgavo-Chasteen made a second motion for mistrial, which was denied.

*Trial testimony*

C.A., the assistant store manager of a home improvement store, saw Morgavo-Chasteen take a battery charger off the shelf, place it in a shopping bag, then leave the store without paying.  C.A. did not see a knife in Morgavo-Chasteen's hand while they were inside the store.  C.A. contacted him outside, stating, "Excuse me.  Excuse me sir."

Morgavo-Chasteen turned around and faced C.A. with a knife in his right hand and the bag in his left hand.  He was holding the knife close to his body near his chest.  He did not point the knife at C.A.  C.A. saw the blade of the knife was two and a half to three inches long and three-fourths to one-inch wide.

After he observed the knife, C.A. was "scared for [his] life" because having a knife out is threatening.  "[I]t kind of stopped [him] in [his] tracks" and he did not approach Morgavo-Chasteen.  C.A. said, "Hey, I just want my stuff back.  Put the knife away.  I want my stuff back."  Morgavo-Chasteen said, "Just leave me alone" and "Stay back."  He ran across the street

4

to a bicycle and rode off.  C.A. did not follow him but instead called police.

When police arrested Morgavo-Chasteen 16 days later, he had a Swiss army knife and a box cutter in his backpack, and two pocket knives in his pants pocket.  C.A. identified the larger of the pocket knives as most similar to the one Morgavo-Chasteen had in his hand.

Morgavo-Chasteen testified that he did not have any knives that day but was holding his keys, which included a two-inch key to his bike lock, about the size of a car key.  He knew that use of force or fear would convert shoplifting into a robbery, and "[t]he consequences are a lot more severe."  Because of his record, he was "not willing to put [himself] at risk of such dire consequences."  He did not mention a prior strike or the three strikes law.

*Sentencing*

The court sentenced Morgavo-Chasteen to the mid-term of three years for robbery, doubled for the prior strike, plus one year for use of a deadly weapon, five years for the prior serious felony conviction, and one year for the prior prison term, for a total of 13 years.  The court imposed a restitution fine of $3,900 (§ 1202.4, subd. (b)), an additional fine of $41 (§ 1202.5), a court security fee of $40 (§ 1465.8) and a court facilities assessment of $30 (Gov. Code, § 70373).  The court found he did not have the present ability to pay the court security fee.

The court ordered a concurrent two-year prison sentence for violation of probation in an attempted robbery case (§§ 211, 664).  The court ordered a restitution fine of $3,900 (§ 1202.4, subd. (b)), an additional fine of $41 (§ 1202.5), a court security fee of $40 (§ 1465.8) and a court facilities assessment of

$30 (Gov. Code, § 70373). The court stayed the restitution fine and found inability to pay the other fines. However, the abstract of judgment shows the $3,900 restitution fine and the $41 fine in both cases.

## DISCUSSION

### *Comments about strikes*

Morgavo-Chasteen argues that he was prejudiced by the prosecution's statement that "this is not a three strikes case," and the court's statement that "[t]here's no strike issue here at all." He argues that these statements are untrue or misleading, and signal that the jury need not take the case seriously. He argues that the statements undermined his credibility when he testified that he did not use a knife because of the consequences.

"'[T]he trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.]" (*People v. Williams* (2006) 40 Cal.4th 287, 323 [upholding denial of mistrial based on prosecutorial misconduct].) A mistrial should be granted "'only when a party's chances of receiving a fair trial have been irreparably damaged.'" (*Ibid*.) We review an order denying a mistrial for abuse of discretion. (*Ibid*.) The trial court here properly exercised its discretion to deny a mistrial.

Because sentencing decisions are generally "irrelevant to the jury's task," "it is unnecessary, and unwise, to concern them with the ramifications of their verdict," such as the effects of the three strikes law. (*People v. Cardenas* (1997) 53 Cal.App.4th 240, 247-248.)

The jury knew Morgavo-Chasteen had prior convictions for grand theft person, felon in possession of firearm, commercial burglary, and attempted robbery. He testified that he did not use a knife because it would convert a shoplifting (a

6

misdemeanor) to a robbery (a felony), which, because of his record, would have "very severe" consequences. This testimony is not inconsistent with the prosecutor's and judge's statements that no strikes were involved. The statements during jury selection thus did not impair the jury's evaluation of Morgavo-Chasteen's testimony.

*Sufficiency of evidence of deadly weapon use*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Robbery may be committed by using force or fear to keep a store employee from regaining control over property that has been taken. (*People v. Estes* (1983) 147 Cal.App.3d 23, 27.) The jury found that in the commission of the robbery, Morgavo-Chasteen "personally used a deadly and dangerous weapon, to wit: a KNIFE, in violation of Penal Code section 12022(b)(1)." The evidence was sufficient to show that he displayed a knife to instill fear in order to facilitate taking the property.

"Use" of a deadly weapon does not require infliction of harm. "'[T]here need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a [weapon] in aiding the commission of one of the specified felonies. "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." [Citation.]'" (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 (*Masbruch*), italics

omitted.)  A jury may find "use" of a weapon when its display aided in completing an essential element of the crime.  (*Id.* at p. 1011.)

While *Masbruch* dealt with an enhancement for use of a firearm, the court noted that the relevant language of "uses" and "in the commission of" also appears in the enhancement for use of a deadly or dangerous weapon involved here.  (*Masbruch, supra*, 13 Cal.4th at p. 1006.)  "Identical terms in analogous statutes are to be construed in like manner," including enhancement statutes.  (*People v. Frausto* (2009) 180 Cal.App.4th 890, 899-900.)  "Use" of a deadly weapon is broadly construed. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1198 (*Hajek and Vo*), overruled on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)  "In determining whether there was substantial evidence of . . . knife use, we may properly consult cases construing the term 'uses' in other enhancement statutes," including personal use of a firearm.  (*Ibid.*)

An enhancement for use of a deadly weapon may be based on deliberate display of a knife to intimidate and control the victim.  (*Hajek and Vo, supra*, 58 Cal.4th at p. 1200.) Deliberate display of the knife here was sufficient for the jury "'"to find a facilitative use rather than an incidental or inadvertent exposure.'" [Citation.]"  (*Id.* at p. 1198.)  It was not necessary for Morgavo-Chasteen to point the knife at the victim or accompany its display with threats.  (*People v. Granado* (1996) 49 Cal.App.4th 317, 322 [firearm use enhancement upheld where defendant removed gun from waistband and held it in front of himself while standing a few feet from victim], cited with approval in *Hajek and Vo*, at p. 1198.)

8

The enhancement here is not barred by *In re B.M.* (2018) 6 Cal.5th 528, where the assailant used a butter knife to make slicing movements on the victim's legs, which were covered with a blanket. That case did not involve an enhancement for use of a deadly weapon. Instead, it held that the evidence did not establish assault with a deadly weapon (§ 245, subd. (a)(1)), which requires intent to commit acts likely to injure another and use of an object in a manner likely to cause serious injury. (*In re B.M.*, at p. 534.) *In re B.M.* did not change the rule of *Hajek and Vo* that a deadly weapon enhancement may be established by display of a knife. As the court observed in *People v. McGee* (1993) 15 Cal.App.4th 107, 115, display of a knife is not sufficient to establish assault with a deadly weapon, but it may be sufficient to establish an enhancement for use of a deadly weapon if displayed to deter the victim from resisting. Sufficient evidence here established that the knife was displayed to facilitate taking the property and was not "incidental and unrelated to the offense." (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1003-1004.)

*Deadly weapon instruction*

A trial court must instruct the jury on the law necessary to its understanding of the case. (*People v. Roberge* (2003) 29 Cal.4th 979, 988.) We independently review whether jury instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

The jury was instructed, "If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant personally used a deadly or dangerous weapon during the commission of that crime. A *deadly or dangerous*

9

*weapon* is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. . . . Someone *personally* uses a deadly or dangerous weapon if he or she intentionally: [¶] Displays the weapon in a menacing manner."  (CALCRIM No. 3145, modified, original italics.)

A knife is not an inherently dangerous weapon. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 (*Aledamat*).)  But "'it may assume such characteristics, depending upon the manner in which it was used . . . .' [Citation.]" (*Ibid*.)  Thus, the first option given the jury—that a knife is an inherently deadly or dangerous weapon—was invalid.  Only the second option was valid—that a knife is deadly or dangerous if used in a way capable of causing and likely to cause death or great bodily injury.

Where a jury is presented with both a valid and an invalid theory, we apply the test of *Chapman v. California* (1967) 386 U.S. 18, 24, to determine whether the error is harmless beyond a reasonable doubt.  (*Aledamat, supra,* 8 Cal.5th at pp. 11-13.)  *Aledamat* involved an assault with a deadly weapon, and criminal threats with a deadly weapon use enhancement.  From three to four feet away, the defendant thrust a box cutter at the victim, stating, "I'll kill you." (*Id*. at p. 4.)  The court described a box cutter as "a type of knife." (*Id*. at p. 6.)  As is the case here, the jury was erroneously given the option of finding that it was inherently deadly, or was used in a deadly manner.  The court found the error harmless because "if used to assault someone, i.e., used as a weapon, a box cutter is potentially deadly even if not designed for that purpose." (*Id*. at p. 14, italics omitted.)  The same reasoning applies here.

10

Morgavo-Chasteen relies on *People v. Stutelberg* (2018) 29 Cal.App.5th 314, which contains the same alternative-theory error regarding definition of a deadly weapon.  The court did not find the error harmless because it was unclear if defendant held the box cutter in the same hand he swung at one of the victims, and "the jury could reasonably conclude that his 'flicking' motion was more of a threat, as opposed to an act likely to cause death or great bodily injury."  (*Id*. at p. 322.)  *Stutelberg* does not apply here because, as in *In re B.M.*, the instruction pertained to assault with a deadly weapon, not a "use" enhancement.

The jury's verdict found that Morgavo-Chasteen used a knife.  Based on the jury instruction, this finding meant he "[displayed] the weapon in a menacing manner."  (CALCRIM No. 3145, modified.)  These findings are inconsistent with the claim that Morgavo-Chasteen was holding keys, or possibly a knife, for some innocent purpose other than as a weapon.

### *Prior prison term*

On October 8, 2019, the Governor signed Senate Bill No. 136.  This legislation provides that effective January 1, 2020, the imposition of a one-year term pursuant to section 667.5, subdivision (b), is limited to prior prison terms for sexually violent offenses.  The prior prison term here was for commercial burglary (§ 459) and felon in possession of a firearm (§ 29800, subd. (a)).

We accept the Attorney General's concession that Senate Bill No. 136 applies to Morgavo-Chasteen's sentence.  (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.)  The section 667.5, subdivision (b) enhancement is stricken.  (*People v. Wright* (2019) 31 Cal.App.5th 749, 756-757.)  The case is remanded for

11

resentencing, at which time the trial court may reconsider all sentencing choices, so long as the aggregate prison term is not increased. (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1260.)

*Fines*

The abstract of judgment for the probation violation case shows the imposition of a restitution fine of $3,900 (§ 1202.4, subd. (b)) and an additional fine of $41 (§ 1202.5). However, in the oral pronouncement of judgment, the trial judge stayed the restitution fine and found inability to pay the other fine. The oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-188.) We accept the Attorney General's concession that the abstract must be corrected as to these fines in Case no. 1499205.

DISPOSITION

In Case no. 18CR04746, the one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b), is stricken. In Case no. 1499205, the restitution fine is stayed and the $41 fine is deleted. The cases are remanded for resentencing. The clerk of the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

12

James E. Herman, Judge

Superior Court County of Santa Barbara

_____

Adrian Dresel-Velasquez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.