Filed 9/1/16  P. v. Servillo CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANK MILES SERVILLO,<br><br>    Defendant and Appellant. | B261822<br><br>(Los Angeles County<br>Super. Ct. No. BA421848) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Melissa N. Widdifield, Judge.  Affirmed.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Among other crimes, a jury convicted Frank Miles Servillo (defendant) of second degree robbery (Pen. Code, § 211),[1] and found that he "personally used" a firearm in the course of that robbery (§ 12022.53, subds. (b) & (e)(1)). On appeal, defendant challenges the sufficiency of the evidence supporting the jury's finding of "use" as well as the trial court's admission of evidence that the robbery victim and his mother received anonymous threats prior to their testimony. Defendant's arguments lack merit, and we accordingly affirm.

**FACTS AND PROCEDURAL BACKGROUND**

## I. Facts

Six men accosted two seventh graders as they were walking in Highland Park to get dinner. One of the men issued a gang challenge, asking, "Where you from?" and proclaiming either, "This is Avenues" or, "This is Avenues 57." The Avenues are a gang in Highland Park.

When one of the boys, Edward, declined to state a gang affiliation, the man who challenged them asked if Edward or his friend had any money, and then asked Edward to hand over the skateboard he was holding in his hand. When Edward refused, the man reached toward his waistband and lifted up his shirt, making it possible for Edward to see "the figure of a gun." Neither Edward nor his friend actually saw the gun itself, but both understood the man's gesture as conveying that "he had a gun or something" because "people put guns right there in their waistband." The man repeated his demand for Edward's skateboard. Fearing that he would be shot, Edward handed over the skateboard. One of the other men in the group then said, "Now get out of here before this guy gets crazy on you" or, "Just keep walking." The boys took this advice, and quickly left the area.

The boys called the police. Within minutes, police arrived at the street where the boys reported the robbery had occurred. The police gave chase on foot to a man who fled at the sight of the police car and pursued that man into a backyard party. At the party,

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

one of the police officers saw defendant and Jose Pereira (Pereira) each throw a handgun over the fence into the neighboring yard. The police retrieved the weapons and determined that they were both loaded.

Edward's friend consistently identified defendant as the man who demanded Edward's skateboard, who made the gestures toward his waist, and who took the skateboard. The friend did so at a field show-up immediately after defendant's arrest as well as at trial. Edward's identification of defendant as his assailant was less consistent: At the field show-up, Edward identified defendant; during his preliminary hearing testimony, Edward testified that he could not identify defendant and denied that he had identified defendant at the field show-up; and at trial, Edward testified that defendant "look[ed] familiar" and admitted to having identified defendant at the field show-up.

## II.    Procedural History

The People charged defendant with (1) second degree robbery (§ 211), (2) having a concealed firearm on his person (§ 25400, subd. (a)(2)), and (3) carrying a loaded, unregistered firearm (§ 25850, subd. (a)).[2] As to the second degree robbery, the People further alleged that defendant was armed with a firearm (§ 12022, subd. (a)(1)) and personally used a firearm (§ 12022.53, subds. (b) & (e)(1)). The People additionally alleged that all three crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(A)).

The jury convicted defendant of all three crimes, and found true the firearm and gang allegations.

The trial court sentenced defendant to a 15-year prison term. The court selected the second degree robbery count as the base count, selected a five-year base sentence and added 10 years for the "personal firearm use" allegation. The court stayed the gang enhancement in the interests of justice. The court imposed a three-year prison sentence on the concealed firearm count, but ran it concurrently with the robbery sentence. The

---

2    The People also charged Pereira with the same crimes, but his appeal is not before us.

court also imposed a three-year sentence on the loaded firearm count, but stayed it pursuant to section 654.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I. Substantial Evidence

Section 12022.53, subdivision (b) requires a court to impose an additional, consecutive 10-year prison term if a defendant "personally uses a firearm" "in the commission of" several enumerated felonies, including a robbery. (§ 12022.53, subds. (a)(4) & (b).) Defendant argues that the evidence does not support the jury's finding of "personal use." In considering a challenge to the sufficiency of the evidence, our task is assess whether there is "'substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty [of the enhancement] beyond a reasonable doubt.'" (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170, quoting *People v. Albillar* (2010) 51 Cal.4th 47, 59-60.) In undertaking this assessment, we view the record in the light most favorable to the jury's finding and draw all reasonable inferences in support of that finding. (*Livingston*, at p. 1170.)

Over 40 years ago, our Supreme Court explained that "'[u]se' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.'" (*People v. Chambers* (1972) 7 Cal.3d 666, 672.) Thus, a person "uses" a firearm to commit a crime when the firearm "aids" or "facilitat[es]" the commission of that crime. (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1001; *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1472.) Although there is no one definition of facilitative conduct (e.g., *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1492 [noting "[t]here are no precise formulas, or particular fact patterns" in assessing "use"]), "use" typically occurs in one of two ways: (1) where "'the gun [is] aimed at the victim, intentionally fired or used to strike the victim'"; or (2) where "'the gun was held or exposed in a menacing fashion accompanied by words threatening a more violent use.'" (*People v. Smit* (2014) 224 Cal.App.4th 977, 987-988, quoting

4

*People v. Jacobs* (1987) 193 Cal.App.3d 375, 381.)  The latter type of "use" does not require that the defendant show the firearm or touch the firearm (*Bryant*, at p. 1472; *Alvarado*, at p. 1004), and does not require that the victim see the firearm (*People v. Granado* (1996) 49 Cal.App.4th 317, 326-327 (*Granado*); *Alvarado*, at p. 1004; *Jacobs*, at pp. 380-382).  It is enough if the defendant "makes [the] presence [of the firearm] known," and "brings [the firearm] 'into play.'"  (*Granado*, at pp. 325, 327; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1198, overruled in part on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192.)  "Use" is to be "broadly construed."  (*Chambers*, at p. 672; *Hajek and Vo*, at p. 1198.)

Applying these principles, a firearm is "used" when a defendant puts a gun in his waistband, pulls it out while making a demand, and puts it back.  (*Granado*, *supra*, 49 Cal.App.4th at p. 325; *People v. Johnson* (1995) 38 Cal.App.4th 1315, 1317-1318, 1320-1321 (*Johnson*).)  A firearm is also "used" when a defendant puts a gun in his waistband and lifts his shirt to show the gun's handle while making a demand.  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1436 (*Monjaras*); *People v. Colligan* (1979) 91 Cal.App.3d 846, 849, 851 (*Colligan*).)

There is substantial evidence upon which a jury could reasonably conclude that defendant's conduct in this case qualifies as "use" of a firearm.  There is substantial evidence that defendant possessed a real gun because he was seen tossing an actual, loaded gun over a fence just minutes after he accosted Edward and his friend.  There is also substantial evidence that defendant "used" that gun.  As in *Granado*, *Johnson*, *Monjaras* and *Colligan*, defendant placed his gun in his waistband.  Although neither Edward nor his friend directly saw any part of the gun, Edward testified that he saw the "figure of a gun."  Defendant further made the presence of the gun known by reaching toward his waistband and lifting his shirt as he was demanding the skateboard.  Defendant's words and conduct communicated his willingness to back up his verbal demands with gun violence, and it is a message that both Edward and his friend—by their conduct at the time and in their subsequent testimony—heard loud and clear.  In sum,

5

defendant made the presence of the gun known and put the gun "into play"; in so doing, he "used" it.

Defendant assails this analysis on the ground that he was, at most, "pretending" to have a gun and "pantomiming . . . getting out a gun." To the extent defendant argues he did not have a real gun, the jury heard substantial evidence to the contrary. To the extent he argues that gestures alone cannot constitute "use," he is urging us to depart from existing precedent: If lifting one's shirt to show off the handle of a gun in one's waistband constitutes "use," so does lifting one's shirt to show off the outline of a gun in one's pants. Defendant urges that there are good reasons to adopt a more stringent standard, including what he perceives as the heavy, 10-year sentence for this enhancement. But this is an argument for our Legislature. We will adhere to the longstanding precedent, which supports the jury's finding of "use" in this case.

## II. Evidentiary Error

During the trial, the court permitted Edward's mother to testify regarding a threatening text message and a threatening phone call she received. The day before Edward was scheduled to testify at defendant's preliminary hearing, the mother received a text message from an unknown person that read: "Go to court and say it wasn't them, that you got everything back." The mother told Edward about the text message. A month before the trial began, the mother received a phone call in which an unknown male told her, "Fuck your son and fuck you", "We are going to get him", and either "This is Cypress Park" or "Cypress Park." "Cypress Avenues" is a clique of the "Avenues" street gang. The trial court instructed the jury that evidence relating to that message and call was admitted "only for the effect of those contacts on the state of mind of the recipient and for no other purpose."

Defendant argues that the trial court erred in admitting evidence of these threats because there was no evidence tying *him* to the threats. For support, he cites *People v. Hannon* (1977) 19 Cal.3d 588, 598-599 (*Hannon*) and *People v. Weiss* (1958) 50 Cal.2d 535, 553-554 (*Weiss*).) We review the trial court's admission of evidence for an abuse of discretion. (*People v. Sanchez* (2016) 63 Cal.4th 411, 456.)

6

The trial court did not abuse its discretion in admitting evidence of the threatening text and phone call. *Hannon* and *Weiss* prohibit a court from admitting evidence of threats made to witnesses unless the defendant himself made the threats or directed that they be made, but this prohibition applies when the evidence is being admitted to show the defendant's consciousness of guilt. (*Hannon*, *supra*, 19 Cal.3d at pp. 598-599; *Weiss*, *supra*, 50 Cal.2d at p. 554.) This rule makes sense: If the defendant is not somehow personally responsible for a threat, it is not relevant to show *his* consciousness of guilt. However, evidence that a witness has been threatened can also show that the witness ""''is afraid to testify or fears retaliation for testifying,'''" which ""''is relevant to the credibility of that witness.''''" (*People v. Adams* (2014) 60 Cal.4th 541, 570, quoting *People v. Mendoza* (2011) 52 Cal.4th 1056, 1084 (*Mendoza*); *People v. Burgener* (2003) 29 Cal.4th 833, 869 ["[a]n explanation of the basis for the witness's fear is likewise relevant to her credibility"].) When a threat is admitted for *this* purpose, it does not matter whether the threat is linked to the defendant because the threat affects the witness's state of mind, and hence his or her credibility, regardless of its source. (*Mendoza*, at p. 1084 ["evidence of a 'third party' threat may bear on the credibility of the witness, whether or not the threat is directly linked to the defendant"]; *People v. Abel* (2012) 53 Cal.4th 891, 925; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368.)

In this case, the trial court admitted the evidence solely to prove the witnesses' state of mind, and hence their credibility. The text message bears on Edward's and his mother's credibility because she told him about the message; the phone call bears on mother's credibility. Because we presume the jury followed the court's instructions in the absence of evidence to the contrary (and there is none here), (*People v. Capistrano* (2014) 59 Cal.4th 830, 869), the absence of any link between the threats and defendant does not call into question the admissibility of the threats.

Defendant makes two arguments in response. First, he contends that there is insufficient evidence that the threats scared Edward because Edward disclaimed being afraid the day he testified at the preliminary hearing. However, Edward's testimony at the preliminary hearing was inconsistent with his statements to the police immediately

after the robbery as well as his subsequent trial testimony.  A witness's inconsistent testimony is not a prerequisite to admission of evidence regarding threats, (*Mendoza*, *supra*, 52 Cal.4th at p. 1086), but it exists here.

Second, defendant seems to suggest that admitting evidence of threats made by other anonymous gang members violates Evidence Code section 352 because gang evidence is "inflammatory."  To begin, defendant has forfeited this argument by not objecting on this basis below.  (Evid. Code, § 353.)  The argument lacks merit in any event.  A trial court may exclude evidence under Evidence Code section 352 if, among other reasons, "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Gang evidence in this case was relevant not only to the threats, but also more chiefly to the gang enhancement the People charged.  As a result, the probative value of the gang evidence was substantial and its undue prejudice relatively minor vis-à-vis its relevance to the threats.  At a minimum, the trial court did not abuse its discretion in admitting the evidence under Evidence Code section 352.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

8